HEIRS OF ALFREDO RAMÍREZ DE ARELLANO, ETC., Petitioners, *v.* SUPERIOR COURT OF MAYAGÜEZ, ÁNGEL FIOL NEGRÓN, JUDGE, Defendant; and LIVIA DEL MORAL TORRELLAS, Intervener.

No. 2332.    Submitted September 23, 1957.—Decided May 26, 1959.

*José A. Poventud, Francisco Parra Toro, Carlos García Méndez, José Rosario Gelpí,* and *Amador Ramírez Silva* for petitioners. *Enrique Báez García* for intervener, plaintiff in the main action.

Mr. Justice Saldaña delivered the opinion of the Court.

## ON RECONSIDERATION

■ The facts of this case appear in our former opinion. 80 P.R.R. 147. There we construed the stipulation of interest that was set forth in the mortgage deed taking into account: (1) the literal sense of its clauses; (2) the connection between the phrase "the effectiveness of the loan" and the other clauses of the contract; (3) the term or period of three years essentially fixed for the maturity of the debt; and (4) the rules of construction of contracts contained in our Civil Code. With respect to said factors, considered isolatedly, we declared that the common intent of the parties upon the contract being perfected was the following: *"to agree on the payment of interest solely for the duration of the contract."* That is, we decided that "there was no express agreement as to interest at the rate of nine per cent after maturity of the debt or on default" and that "it would const'tute a distortion of the normal sense of the words to say that effectiveness of the loan means here 'until its total reimbursement or until full payment of the loan' or 'until the indebtedness is fully settled,' for the obligation had a fixed maturity date." (At 151.)

In order to so fix the meaning and scope of the stipulation as to interest we only considered the afore-mentioned interpretative elements of the contract. We did not have before us evidence on the conduct of the parties at the execution and duration of the contract, since these standards of evaluation were not offered to the judge when the motion for summary judgment was submitted by the defendants (petitioners herein) in the Superior Court.

On reconsideration it is alleged in synthesis: (1) that the intent of the parties upon using the expression "the loan accruing interest during its effectiveness at the rate of nine per cent . . ." was to stipulate interest while it remained unpaid and that this is clearly seen from the literal terms

of the contract; and (2) that in order to judge the intent of the contracting parties it is necessary to admit evidence on acts prior, contemporaneous and subsequent to the contract. For the reasons already stated in our first opinion in this case, we believe that the first ground for reconsideration is devoid of merit. And that suffices to reaffirm our decision that the lower court did not commit error in dismissing the motion for summary judgment filed by the defendants. As a question of law, no summary judgment could be entered dismissing the action for nullity of the foreclosure proceeding, since it does not appear from the face of the loan and mortgage contract that the foreclosing creditor was entitled to claim default interest at the rate of nine per cent from the stipulated date of maturity until full payment of the debt. See *Piovanetti* v. *Vivaldi*, 80 P.R.R. 108 (1957).

However, we believe that petitioners are right in alleging that in this certiorari proceeding it was inappropriate to give a *final* interpretation to the stipulation of interest set forth in the loan and mortgage contract between Francisco del Moral and Francisca Sánchez Chavarry. In the first place, it is unnecessary to make a pronouncement which is adverse to the defendants and *favorable to the plaintiffs on the construction of the stipulation of interest*, for the purpose of deciding the incident of summary judgment involved in this proceeding. In the second place, we cannot reach a final conclusion on the construction of the said contract—determining as a matter of fact that the mortgage foreclosure proceeding was void—without giving the defendants the opportunity to offer evidence at the trial on acts prior, contemporaneous and subsequent to the contract, and also on the other circumstances concerning the stipulation of interest, which can actually contribute to the correct investigation of the common intent of the executing parties.

In other words, upon affirming the decision of the Supe-

rior Court refusing to enter summary judgment in favor of the defendants, it was inappropriate to make a pronouncement, on appeal, which would be the equivalent to entering summary judgment in favor of the plaintiffs on the question of nullity of the foreclosure proceeding. This is so because there is a genuine controversy as to the material facts in the construction of the stipulation of interest that can only be decided in a plenary suit. *Cf. Santiago* v. *Superior Court; Dexter, Int.* 75 P.R.R. 213 (1953) and *Ocasio* v. *San Juan Dock Co.*, 75 P.R.R. 873 (1954). See 6 Moore, Federal Practice (2d ed.), § 56.12.

■■ In effect we have to recognize that the terms of the loan and mortgage contract in this case require construction because they are not clear and leave doubt as to "the common and evident intent" of the executing parties. The only terms which can be catalogued as clear are those which in themselves are lucid enough to be understood in ·one sense alone, without leaving any room for doubt, controversies or difference of interpretation, and without necessitating for their understanding any reasoning or illustration susceptible to challenge. See the Judgment of February 20, 1940, of the Supreme Court of Spain, 24 *Rev. de Derecho Privado* 116. Hence, it is necessary to make clear what was the real common intent of the contracting parties as to the payment of interest on the principal of the loan.[1] That question must be decided, in harmony with the doctrine laid down in *Piovanetti* v. *Vivaldi*, 80 P.R.R. 108 (1957), after the action of nullity of the summary foreclosure proceeding is litigated. At the trial both parties shall be able, by means of pertinent and admissible evidence,

---

[1] See §§ 1233 to 1240 of the Civil Code (1930 ed.), 31 L.P.R.A. §§ 3471 to 3478; § 390 of the Code of Civil Procedure, (1933 ed.), 32 L.P.R.A. § 1671; 3 Castán, *Derecho Civil Español, Común y Foral* (8th ed. 1954), 398–405; IV–2 Puig Peña, *Tratado de Derecho Civil Español* 42–48 (1951); II–1 Puig Brutau, *Fundamentos de Derecho Civil* 291–305 (1954); and VIII–2 Manresa, *Comentarios al Código Civil Español* (5th ed. 1950), 492–539.

352

to offer to the judge all the elements of evaluation with respect to the conduct of the contracting parties and the other circumstances that might serve to determine what was the real "common and evident intent" of the executing parties. The Superior Court shall apply to the proven facts the rules of construction of contracts as fixed by the Civil Code and the applicable doctrine.[2] Only then can it be determined whether or not there was a specific agreement *in the mortgage* as to the payment of interest at nine per cent after maturity of the debt or on default. See §§ 1646 of the Civil Code (31 L.P.R.A. § 4573) and 232 of the Code of Commerce (10 L.P.R.A. § 1654). *Cf.* 11 Manresa, *Comentarios al Código Civil Español* (5th ed. 1950), 628–31; 2 De Casso y Cervera, *Diccionario de Derecho Privado* 2371–72 (1954); Judgment of the Supreme Court of Spain, May 9, 1944, 6 *Jur. Civ.* (2d ser.) 645, 664–65.

▮ Of course, no contract or verbal agreement reached by the creditor and debtor as to payment of interest at a higher rate than the legal interest, can have the same effect of a mortgage. As we said in *Figueroa* v. *Boneta,* 58 P.R.R. 811, 816 (1941) : "[it] must be executed by public deed and recorded in the registry before it can serve as the basis for a summary mortgage foreclosure."

▮ It should be noted that in this case the action exercised herein is not the action for damages based on § 169 of the Regulations (30 L.P.R.A. § 1090). What Livia del Moral requests in her action against the Heirs of Ramírez de Arellano is that: "the nullity of the summary foreclosure proceeding be decreed . . . and the property be returned . . . with the fruits yielded or that should have

[2] Aside from the authorities cited in footnote 1, see: *Rutledge* v. *Gill,* 78 P.R.R. 665 (1955); *Caballero* v. *Kogan,* 73 P.R.R. 617 (1952); *Ramírez* v. *Ramírez,* 65 P.R.R. 511 (1946); *Paracchini* v. *Vilá et al.,* 23 P.R.R. 139 (1915); *Matson* v. *Goyco,* 18 P.R.R. 678 (1912); *Solá* v. *Orcasitas,* 11 P.R.R. 78 (1906); Judgments of the Supreme Court of Spain of April 20, 1944, (6 *Jur. Civ.* 2d ser., 516–32) and of December 9, 1944 (9 *Jur. Civ.,* 2d ser., 633, 651–52).

been yielded." In this respect it suffices to reiterate here the standards established by our constant and uniform decisions: (1) it is necessary to adhere strictly to the procedures and requirements of the summary proceeding, and any departure therefrom shall render the action void; (2) the collection of excess interest or other amounts that are not secured by mortgage constitutes a substantial error to the prejudice of the debtor's rights which invalidates the foreclosure proceeding even when such illegality is due to a mere error of law or mere negligence in the investigation of the facts stated in the initial petition; and (3) the action seeking nullity of the foreclosure proceeding never prescribes because "prescription does not run against that which is nonexistent. The course of time cannot insufflate life to that which legally never had it." See, among others, *Piovanetti* v. *Vivaldi*, 80 P.R.R. 108 (1957); *Gaztambide* v. *Heirs of Ortiz*, 70 P.R.R. 388 (1949); *Buil* v. *Banco Popular*, 69 P.R.R. 237 (1948); *F. Rodríguez Hnos. & Co.* v. *Aboy*, 66 P.R.R. 498 (1946); *Costas* v. *G. Llinás & Co.*, 66 P.R.R. 688 (1946); *De Jesús* v. *Assad*, 63 P.R.R. 131 (1944); *Figueroa* v. *Boneta*, 58 P.R.R. 811 (1941); *Vázquez* v. *Gutiérrez*, 52 P.R.R. 162 (1937); *Martorell* v. *Crédito y Ahorro Ponceño*, 42 P.R.R. 632 (1931); *Santos* v. *Crédito y Ahorro Ponceño*, 41 P.R.R. 934 (1931).

In view of the privileged situation of the foreclosing creditor in the mortgage proceeding, the Law and the Regulations impose on him an absolute duty of truth with respect to the facts and circumstances contained in the initial petition. Art. 38 of the Mortgage Law (30 L.P.R.A. § 63) and § 169 of the Regulations (30 L.P.R.A. § 1090). It is not incumbent on the judge to investigate or determine the accuracy or falsity of the acts alleged in the initial petition to authorize the summary proceeding. Such responsibility falls entirely on the foreclosing creditor. Nor is it necessary in order for the proceeding to be void that the conduct of the foreclosing creditor be equivalent to deceit. An error

constituting negligence because the allegation is contrary to facts or to the juridical rules is sufficient. The contrary thesis upheld by Guasp in his work *La Ejecución Procesal en la Ley Hipotecaria* (1951), 71–73, does not find support in the Spanish case law or in the doctrine of the other authors.[3] The reason is simple: in Spain the section corresponding to § 169 of our Mortgage Law Regulations only mentions the *malice* and omits the *negligence*. Hence, Guasp gives his very personal opinion on the meaning of the word "negligence" in the Mortgage Law for the Colonial Provinces (1893), which has never ruled in Spain. We do not believe that we should reject now the ruling laid down by our case law and sanctioned on this point and accept instead Guasp's interpretation. Besides, it is reasonable, and even necessary, to include in the concepts of negligence and nullity any error as to the facts which the foreclosing creditor sets forth in the initial petition, since his acts can, by means of the most summary proceeding, cause the debtor's ruin.

The opinion previously rendered by this Court (80 P.R.R. 147) in this case is modified as indicated herein. The writ issued will be quashed and the case remanded to the Superior Court for further proceedings compatible with the terms of this opinion.

Mr. Justice Belaval dissents for the reasons stated in a separate opinion.

Mr. Justice Santana Becerra agrees that the case be remanded to the lower court in order that it should make clear what was the real intention of the contracting parties with respect to the payment of interest and he expresses no view as to the other pronouncements of the opinion.

---

[3] Guasp's work was originally published in articles which appeared in volumes 14 and 15 of the *Revista Crítica de Derecho Inmobiliario* (1941 and 1942). See pp. 414, 478, 513 and 593 of volume 14 and pp. 9, 84, 225, 297, 383 and 505 of volume 15.

MR. JUSTICE BELAVAL, dissenting.

We agree with the view of the majority opinion which orders that the case be remanded to the trial court to determine the scope of the extension of the mortgage to include interest, challenged herein, in accordance with the method provided by our Civil Code for the construction of the clauses of a contract. In all the aspects concerning the mortgage extension for interest, the case of *Piovanetti* v. *Vivaldi*, 80 P.R.R. 108, 114–118 (Saldaña 1957), has the following practical results: (1) it takes out the stipulation of interest in a mortgage contract from the corresponding articles of the Mortgage Law and places it within the sphere of the Civil Code of Puerto Rico; (2) it makes the mortgage extension of said interest depend on the language of the stipulation thereof. I reaffirm my view that it is a situation entirely regulated by the Mortgage Law and not by the Civil Code. Briefly stating the question: Of the two legal bodies, the Mortgage Law is the special one and the Civil Code is the general one; the Civil Code, which was adopted subsequently to the Mortgage Law, provides in its § 1779, 31 L.P.R.A. § 5047, p. 504, that "The form, *extension* and effects of the mortgage, as well as all that relating to its creation, modification, and extinction, and all that which may not have been *included in this chapter*, shall be subject to the provisions of the Mortgage Law, Title 30 which continues in force." Contrary to what is expected, the Mortgage Law is the suppletory law of the provisions of the Civil Code insofar as the extension of the mortgage is concerned. In any event the judgment on reconsideration, upon remanding the case anew to the trial court to determine the true scope of the stipulation as to interest in accordance with the provisions concerning the construction of contracts under the Civil Law, instead of limiting it to a mere literal interpretation and to the discretion of the judge in fixing its scope, without any more evidence than that which constitutes the stipulation itself, provides a more reasonable form of construction.

Now then, I note that in remanding the case in the limited manner it does, the majority opinion forgets to instruct the trial court on another point of the evidence, that of malice or negligence in making a true statement of facts in the initial petition of the summary proceeding, which is the sole and real ground of the action which is exercised.

The provision which creates this principal, independent and autonomous statutory action for damages is § 169 of the Regulations for the Execution of the Mortgage Law of Puerto Rico of 1893, 30 L.P.R.A. § 1090, p. 88, which insofar as pertinent reads thus: "The petition referred to in this section, which shall always be authorized by the signature of an attorney at law, shall enumerate the facts and the legal reasons supporting the *correctness*, the *subsistence* and the *demandability* of the claim and the jurisdiction of the court; it shall specifically state the *exact amounts collected by way of interest or on account of the principal of the debt*, stating also the *net amount* of the claim which, by the mere act of instituting the proceedings the creditor will contract, assuming liability for any loss or damage the debtor or interested third persons may suffer through *malice or negligence in not making a true statement of facts and of the circumstances which the judge must take into consideration in authorizing the institution of the proceedings and continuing them.*" (Emphasis supplied.)

We shall first state the theory of the institution in order to comment later its practical application by our case law.

The facts and the legal reasons supporting the correctness, the subsistence and the demandability of the claim mentioned in said provision, refer to the existence of a mortgage, its effectiveness and maturity. The clearest gloss that we have found on this subject is that of Jaime Guasp, Professor of Procedural Law at the University of Madrid who says: "With respect to the ground for claim, we must set forth: the facts and legal grounds warranting the creditor's claim: both shall establish that the right has actually accrued,

that no cause of extinction has been produced and that it has reached its natural term of maturity. It is to these three stages which are the essence of the existence of credit, and necessary for it to be considered perfect, that the second rule of § 131—(§ 169 of our Regulations)—refers when it requires that the facts and the legal reasons supporting the correctness, subsistence and demandability of the claim be enumerated." Vide: Jaime Guasp—*La Ejecución Procesal en la Ley Hipotecaria*—(ed. by Editorial Bosch, 1951), 119.

It is also well to clarify that the specific assignment as to the interest or principal of the debt, to which said provision refers, is the obligation to declare the *net amounts*, which would be the only ones that could not be directly set forth in the documents submitted to examination. *"Líquida"*, in accordance with the *Diccionario de la Lengua Española de la Real Academia Española,* is that condition of credit which refers to "the balance or residue of an amount certain resulting from the comparison between the debit and the data," the *"data"* being the "item or items contained in a statement indicating the expenses and the receipts."

The concepts of "malice" or "negligence" contained in § 169 are specifically limited by the same section to *"not making a true statement of facts and of the circumstances which the judge must take into consideration in authorizing the institution of the proceedings."*

In relation to this matter, Barrachina was the first to define the meaning of "malice": "The word malice means deceitful intent, deliberate disposition to injure another by not telling the truth or concealing what should be said sincerely and honorably, malice that *a priori* cannot be detected because many of its variations and manifestations would escape the mind, but which should be measured and weighed in each concrete case, with the circumstances surrounding it, by the judge who authorized the proceeding": III Federico Barrachina y Pastor—*Comentarios a la Ley Hipotecaria*—(ed.

by Establecimiento Tipográfico of J. Armengot e Hijos, 1911), 157.

Morell, on the same subject says: "This liability always assumed by the creditor is based on the very nature of the proceeding. It is sought to enforce directly the real mortgage action with intervention of the debtor or third person in his case, but without a hearing. Separately and in an ordinary suit as many exceptions as are deemed proper may be alleged, and if from that suit it appears that the obligation sought to be enforced directly against the property, is not certain, demandable or subsistent, it is only fair that the creditor be bound to pay for whatever damages, including costs, he may have caused the debtor or third persons through his conduct."

"When is the creditor liable for such damages? The law says when he acts with malice. The Regulations for the Colonial Provinces spoke more accurately of *malice* or *negligence.*" (Here Barrachina's former quotation.)

"*It is difficult for the judge to detect that malice merely from the initial petition and the attached documents.* The Regulations for the Colonial Provinces, also more accurate in this, spoke of the power of the judge to authorize and *to continue* the proceedings, which word in our law, may be regarded as included in that of to authorize, since it is proper to authorize the commencement and to authorize the continuation. In any event, the effects of the creditor's liability shall be manifest in case of opposition, either in the proceeding itself under § 132, or separately." 4 Morell, *Comentarios a la Legislación Hipotecaria* (2d ed. by Editorial Reus, 1930), 110–11.

Section 132 refers to the four causes for setting aside a summary proceeding: (1) criminal proceeding for falsity of the mortgage title, (2) third party claim of ownership, (3) cancellation of mortgage executed by the mortgagee, his predecessor or successors in interest and (4) mortgage constituted to secure current accounts, when the statement pre-

sented by the debtor shows a different balance from that presented by the creditor. (Emphasis supplied.)

Roca Sastre, today known as one of the greatest mortgage experts of all times, in referring to the compensation for damages provided by § 131 of the Spanish Mortgage Law —(§ 169 of our Regulations)—says:

"The summary character—for at the bottom there is only one unilateral action on the part of the creditor—requires such cautionary notice, because *it may happen that the creditor may have taken on account a part of the amount of the credit* without it transpiring from the documents presented, in spite of which the proceeding will continue, without it being barred because of a showing of inaccuracy or falsity, except when it has served as basis for the admission of the criminal complaint." (Emphasis supplied.) IV Roca Sastre, *Derecho Hipotecario* (5th ed. by Casa Editorial, 1954), 835.

After examining the provision concerned, as well as a considerable number of analytical views, spread throughout different eras of the mortgage gloss, it clearly appears that the action for damages, either by negligence or malice, insofar as a summary foreclosure proceeding is concerned, is limited: (1) to "not making a true statement of facts and of the circumstances which the judge must take into consideration in authorizing the institution of the proceedings and continuing them," (§ 169 of the Regulations) ; (2) the malice consisting in a "deceitful intent, disposition to injure another, by not telling the truth and concealing what should be said sincerely and honorably," (Barrachina) ; (3) "malice that, *a priori*, cannot be detected because many of its variations and manifestations would escape the mind," (Barrachina) ; (4) malice that cannot "be detected by the judge merely from the initial petition and the documents attached," (Morell) ; as it would be in the event "that the creditor may have taken on account a part of the amount of the credit, without it transpiring from the documents presented," (Roca Sastre).

The Spanish gloss has interpreted the "negligence" con-

tained in the provision of § 169 of our Mortgage Law Regulations, as something equivalent to *"culpa lata,"* after the well-known Latin maxim *culpa lata dolo equiparatur*, that is, such extreme case of guilt as would correspond to deceit. To this effect, Jaime Guasp in his afore-mentioned work, at pp. 71, 72 and 73, expresses himself in the following manner: "The principle of good faith and those deemed related thereto constitute at present one of the reasons of inspiration of the new procedural orientation, to wit: the duty of collaboration of the parties, and, above all, the duty to tell the truth, about which a considerable bibliography has accumulated in recent times.

"As to this principle of good faith, we might possibly find some statement in our texts and in the decisions of our cases, but there is no express formulation thereof, nor what is worse, can it be reasonably maintained that the underlying spirit of our procedural law is notably based on suggestions of this type. Such omission increases, without doubt, the interest of the isolated indications found in our legal bodies.

"One might wonder if one of these cases is contemplated by § 131 of the Mortgage Law, second rule, *in fine*, according to which, 'the creditor will assume liability for any loss or damage the debtor or interested third persons may suffer through malice in not making a true statement of facts and of the circumstances which the judge must take into consideration in authorizing the institution of the proceedings.' This provision originates with § 169 of the Regulations for the Mortgage Law for the Colonial Provinces of July 18, 1893 which provided the creditor's liability 'by the mere act of instituting the proceedings.'

"The language of the section may actually lead one to suppose, by its very terms, that only the creditor in good faith is permitted to lawfully resort to the privileged proceeding instituted.

"On the other hand, upon a close examination of the concrete provision and its contents, it may be noted that it

essentially consists of an imposition of the duty to tell the truth with respect to the facts and circumstances which the judge must take into consideration to authorize the institution of the proceedings.

"That this case deals with an obligation to tell the truth can be maintained in view of the language used in the act, which speaks of malice in the statements of facts. Malice consists, undoubtedly, in concealing or misrepresenting the truth knowingly; basically, then, in the lack of truth, since the duty imposed by the latter does not require the presentation of facts just as they are, but just as they are sincerely believed to be by the party alleging them. The Regulations of the Law for the Colonial Provinces added negligence to malice, and undoubtedly the extreme cases of the latter should receive a treatment analogous to that one (*culpa lata dolo equiparatur*); but the requirement of the truth should not be converted into a punishment on the party because of neglect in the investigation of facts appearing in the proceeding.

"Now then, it is adduced from the text under analysis that the legal mandate has not only a subjective limitation, but also in its application to the creditor it does not extend to his entire remedial conduct, but to a partial activity, which might perhaps be the most important insofar as the duty to tell the truth is concerned. This stresses the point that the requirement of good faith and this duty to tell the truth, partially included in the mortgage proceeding, respond in the light of the law to an idea very different from the conscience, today almost unanimously felt, of its procedural need.

"A close examination of the provisions reveals that, far from having thought of a general punishment to be suffered by the mortgagee whose conduct does not conform to the demands of what may be called the 'good procedural usage', the law contains a mandate, by its origin and its applications, of a much more limited character.

"In effect, the primary thought upon making the declaration under comment, goes rather than to the principle of good faith, which is only indirectly protected, to the re-establishment of the equal juridical position of both parties, equality which was considered destroyed upon granting to the creditor the authority to institute a proceeding which affords the debtor (or the interested third persons) such few possibilities of intervention or of defense. This shows that although there are several procedural subjects, only the malicious conduct of the creditor is expressly forbidden, for although it is true that the latter has the strongest weapons in the proceeding, it is no less true that the other parties who intervene can also cause by their equally malicious conduct injury to other persons. If such is the legal trend, it does not seem doubtful that the specific idea of the procedural good faith becomes hazy and is applied here, not on the merits of its intrinsic justice, but as a remedy or way of compensation."

Let us examine now the practical application of this body of principles laid down by our case law.

Referring strictly to the cases which deal with nullity of summary mortgage foreclosure proceedings, with respect to the last provision of § 169 of the Regulations, we find that prior to the case of *Figueroa* v. *Boneta*, 58 P.R.R. 811 (1941), our decisions were able to systematize the body of principles set forth in the preceding Spanish gloss, except with reference to "malice" or "negligence", relying on the very terms of the Regulations. The need of determining the facts supporting the correctness, the subsistence and the demandability of the claim, was established, among other cases, in the cases of *Llompart et al.*, v. *Dist. Judge of Humacao*, 28 P.R.R. 211, 214 (1920) and *Plant Milling Co. et al.* v. *Navas et al.*, 22 P.R.R. 255, 263 (1915). The need of determining correctly the jurisdiction of the court was established, among other cases, in the case of *Trías* v. *Leaf Tobacco Co.*, 50 P.R.R. 88, 92 (1936). The need of specifically stating the

exact amounts *collected* by way of interest or on account of the principal was established, among other cases, in the case of *Martorell* v. *Crédito y Ahorro Ponceño*, 42 P.R.R. 632, 637 (1931).

Insofar as "malice" or "negligence" are concerned, our former case law does not develop, strictly speaking, the concepts of "deceit" or *"culpa lata"*, although it does employ terms equivalent thereto upon referring to "wilful or negligent abuse," or "fraud," *Polanco* v. *Goffinet et al.*, 29 P.R.R. 111, 116, 117, 129, 132 (Hutchison) (false allegation of previous liquidation of contract of agricultural advances secured by mortgage, rendering the proceeding void, since the mortgagee, upon resorting to "a deliberate misrepresentation of fact amounting to a fraud upon the court" incurred in wilful or negligent abuse; "statement of false and inexistent facts," *Pontón* v. *Succrs. of Huertas González*, 42 P.R.R. 511, 516 (Del Toro 1931) (false allegation that the interest which rendered the credit subject to foreclosure had not been paid) ; "omission of" indispensable facts for the judge to authorize the proceedings, *Martorell* v. *Crédito y Ahorro Ponceño, supra* at 634, 637 (Texidor) (false allegation of net amount of the claim, which omitted to specifically state the exact amount collected by way of interest or on account of the principal, prior to the foreclosure).

It is noted that the concept which remains to be expressly developed, since it has been done impliedly in *Martorell* v. *Crédito y Ahorro Ponceño, supra*, is that the action for damages authorized by § 169 *in fine* is limited to "malice or negligence in not making a true statement of facts and of the circumstances which the judge must take into consideration in authorizing the institution of the proceedings and continuing them," which is the real ground for the only two remedies that the mortgagor has in case of "deceit" or *"culpa lata"*: nullity with damages if the property has passed to the hands of a third person or revendication with fruits if it

has not passed on to a third person, regardless of whether it is called "malice," "negligence," "deceit," *"culpa lata,"* "fraud," "nonexistence," "omission," "grave error," or any other terms equivalent to each other.

As to the concept of "error" it is convenient to clarify that our case law has placed the effect of "grave error" in the same footing with the "statement of false and inexistent facts" —(malice) (deceit) —*Pontón* v. *Succrs. of Huertas González, supra* at 516 and has refused to set aside foreclosure proceedings by virtue of unsubstantial errors in the true statement of facts. *Delgado* v. *Banco Popular*, 55 P.R.R. 913, 915 (Travieso 1940)—"the specific sums collected and paid to the creditor bank charged against the principal or as interest, were not expressly alleged in the complaint"; *Torres* v. *Fernández*, 65 P.R.R. 584, 596 (De Jesús 1946) —erroneous description of the computation of interest; *Salas* v. *Cabassa*, 69 P.R.R. 423, 430–31 (Marrero 1948) —insufficient liquidation of the interest and the additional credit for costs, which reaffirms that the "error" capable of nullifying a proceeding is that which is based on malice or gross negligence and not on the error properly speaking.

After the case of *Figueroa* v. *Boneta, supra,* our decisions have tried to make the foreclosing creditor liable for including in his initial petition interest at the same stipulated rate after maturity. In none of the cases is there the slightest reference to "malice" or "negligence" in the true statement of facts. It is curious to observe the serious concern of some of these decisions over the possibility that any extension at the same interest formerly stipulated might become usurious: *Goico* v. *Rodríguez et al.*, 28 P.R.R. 492 (Hutchison 1920), cited in *Figueroa* v. *Boneta, supra; Caraballo* v. *Registrar*, 48 P.R.R. 902, 904, 906–20 (Hutchison 1935) cited also in *Figueroa* v. *Boneta, supra; Aldrey* v. *Registrar*, 49 P.R.R. 54, 56 (Del Toro 1935), cited also in *Figueroa* v. *Boneta; Toscano* v. *Pomales*, 60 P.R.R. 328, 331 (Del Toro 1942).

The Usury Act was not applicable to the obligations contracted prior to their effectiveness. Act of March 1, 1902, 31 L.P.R.A. 445, § 4592. Neither does it authorize nullity.

That this is not a question governed by the sections of our Civil Code referring to default, but rather by the tacit legal mortgage of § 114 of our Mortgage Law, was already object of study on our part in the separate opinion we rendered in the case of *Valcourt* v. *Iglesias*, 78 P.R.R. 598 (1955). As to the true scope of the limitative agreement in the liability for interest, see our dissenting opinion in *Piovanetti* v. *Vivaldi*, 80 P.R.R. 108, 123–47 (1957).

Now then, as to the limit of the juridical scope that can be given to the mortgage liability for interest, can it be said that the judge is in the same position of defenselessness as in the case of deceitful concealment or inexcusable omission in the liquidation of the security? The answer must be absolutely negative.

In limiting § 169 of our Regulations the liability for damages caused by *malice* or *negligence* "in not making a true statement of facts and of the circumstances which the judge must take into consideration in authorizing the institution of the proceedings," it is clear that if the facts are faithfully stated and the circumstances are set forth in the documents presented, there is no malice or negligence and the liability for damages stands groundless. Both concepts "malice," "negligence," refer exclusively to the deceitful concealment of that part of the credit previously settled, to the liquidation of the mortgage liability.

Article 169 of our Regulations speaks of the *"net amount* of the claim,"* contrary to the provisions of the Spanish Mortgage Law of 1909, § 131, which used the broader descriptive term of "amount of the claim" and to the provisions of the Spanish Mortgage Law of 1946, § 131, which uses the more rigid term *"exact amount* which for all purposes is object of claim."

The reason is obvious. The portion of the provision under consideration is designed to protect the judge who will take part in the proceedings, from any deceitful intent or guilty inaccuracy in the *net amount* of the claim, which facts would not transpire from the documents presented to him. Article 170 imposes on the judge the obligation to examine the initial petition, the recorded copy of the deed, and the certificate of the Registrar of Property, issued after maturity. From those three documents the judge can determine, acting then judicially, the existence of the security (correctness); that it is not cancelled in accordance with the books of the Registry (subsistence) and that it is overdue (demandability). What it cannot determine is the *net amount*, unless the mortgagee himself informs him in his initial petition.

Contrary to what is supposed, in authorizing a summary foreclosure proceeding, the judge has full power to authorize or deny it. It is a judicial function properly speaking and not a purely ministerial function. González Alegre has said that the powers of a judge to reject the petition, "are much vaster than in the ordinary proceeding of Procedural Law" —Manuel González Alegre— *Los Procedimientos Judiciales de la Ley Hipotecaria* (2d ed. by José María Bosch, 1955), 94. If it is a judicial function, undoubtedly the legal determination of the extension of the mortgage security for interest is a judicial adjudication. The same § 170 authorizes the judge to deny the writ demanding payment if the judge does not believe that the legal requirements necessary for its issuance have been met.

This is a summary foreclosure proceeding which was annulled because interest therein was claimed at the stipulated rate after maturity of the obligation secured —*Heirs of Ramírez* v. *Sup. Ct.; Del Moral, Int.*, 80 P.R.R. 147, 151 (Saldaña 1957). There is not the slightest allegation of deceit or negligence in the true statement of facts and of

the circumstances which the judge had to take into consideration in authorizing the institution of the proceedings, nor any question whatever concerning the liquidation of the security. The foreclosure is annulled by a judicial determination as to the extension of the mortgage security for interest, a matter which did not depend on the intent of the mortgagee, but on the application of the law to the facts correctly stated which the judge makes in passing on the issuance of the writ demanding payment. There is no doubt that in a case like this, the mortgagee cannot be liable for the cautionary notice contained in § 169 of the Regulations.

In this case reference is again made to the cases cited in the *Piovanetti* opinion. Among said cases there is cited *Torres* v. *Fernández*, 65 P.R.R. 584, 589–94 (De Jesús 1946), to the effect that the interest may be claimed only at the rate agreed upon after maturity, if the parties have so agreed. That this was not the doctrine or the viewpoint maintained by Mr. Justice De Jesús is shown by his subsequent opinion in the case of *Díaz* v. *Quiñones*, 68 P.R.R. 232, 240 (1948). In this last case, the stipulation concerning interest says plainly: "[T] he amount loaned shall accrue interest at eight per cent per annum, which shall be paid at overdue monthly rates." The mortgage clause itself reads: "[T]o secure the payment of eight hundred seventy-five dollars and forty cents loaned, an additional credit of two hundred dollars for interest; and another credit of two hundred dollars for costs, expenses, disbursements and attorney's fees in case of judicial claim, José Díaz López constitutes a voluntary mortgage in favor of Ramón Díaz Román." (See the mortgage in the original records of civil case No. 9474.) In seeking the nullity thereof it was alleged that the mortgagee collected the amount of $326.82 for interest at the stipulated rate when in the deed the amount fixed for that purpose was only $200, which was the real stipulation on interest signed by the parties.

Mr. Justice De Jesús dismissed the petition for nullity, applying his prior opinion of *Torres* v. *Fernández*, on the following ground: " . . . The purpose of fixing a credit for interest is to protect subsequent purchasers of the property or a mortgage credit thereon. But at the time the mortgage was foreclosed there was no subsequent purchaser or mortgage creditor other than Ramón Díaz Román, since the heirs of José Díaz López were the continuation of the personality of their predecessor and could not be third parties with respect to the creditor Ramón Díaz Román. Therefore, the fact that $326.82 was collected for interest does not invalidate the proceeding even though in the mortgage deed $200 was fixed for that purpose. *Torres* v. *Fernández*, 65 P.R.R. 584." The mortgage in this last case matured on October 31, 1932 and the interest was collected at the same rate agreed upon, eight per cent per annum, up to June 1933, that is, after maturity.

In view of the foregoing I feel constrained to dissent from any decision denying the reconsideration sought.